IN  THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FERNANDO GRADY HORTON #361-630 :

    Petitioner              :

    v.                    :   CIVIL ACTION NO. WDQ-13-3538

FRANK B. BISHOP, JR., et al.    :

    Respondents      :

## MEMORANDUM OPINION

The Respondents move to dismiss Fernando Grady Horton's ("Horton") Petition for a Writ of Habeas Corpus. (ECF No. 7). After reviewing the Petition and the Respondents' Answer, the Court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. § 2254(e)(2). For reasons set forth herein, the Court shall dismiss the Petition with prejudice.

### Procedural History

On January 15, 2010, a jury sitting in the Circuit Court for Baltimore City found Horton guilty of attempted first-degree murder, attempted second-degree murder, first-degree assault, use of a handgun, possession of a handgun, reckless discharge of a handgun on a public street, and possession of a regulated firearm. ECF No. 7, Ex.1, p 1.

At trial, "Asa Thomas testified that on the evening of February 27, 2009, he was visiting friends in his former neighborhood in Baltimore City." ECF No. 7, Ex. 8, pp. 2-8 (summary of case facts during direct appeal). "While driving down Division Street, Thomas noticed the vehicle of a childhood acquaintance, Kathy Randall . . . ." *Id.* Randall asked Thomas to drive her to the liquor store. *Id.* When Thomas's car reached the end of the street, he "glanced to his left [and] [] noticed someone crossing the street." *Id.* "He continued the conversation with

Randall and then looked again.  At that time he saw the barrel of a gun pointed at his window.  A shot was fired, the window shattered, and Thomas was struck in the mouth." *Id.*  Thomas "heard Randall exit the car and exclaim, '[W]hy did you do that?'  The shooter responded, '[F]uck that nigger.'" *Id.*  "When interviewed by a detective at the hospital on March 3, 2009, Mr. Thomas could not provide a description of the shooter.  However, several months later on June 2, 2009, he described the shooter as a black male, medium build, having a mustache and wearing a hoody." *Id.*

Randall also testified. *Id.*  She states that after hearing the gunshot, she "jumped out of the car." *Id.*  "She then saw a male running down the street," but "was too intoxicated to ascertain the identity of the person." *Id.*  Randall "fled to her home."  That evening, Randall "spoke on the phone with [Horton], whom she had been dating for about a week and had seen earlier that evening." *Id.*  Later, Randall "told her mother, in front of appellant, that she thought he shot [] Thomas, but admitted that she was not sure because she was intoxicated at the time." *Id.*  Horton "appeared more nervous and jittery that night than usual." *Id.*  Randall spoke with the police about the incident after her friend was pulled over in her vehicle for a tinted window violation, and she was asked to report to the scene as the vehicle's owner. *Id.*  At her third interview, "Randall advised Detective Gaskins that [Horton] was the shooter and selected his photograph from an array." *Id.*

> At trial, [] Randall acknowledged that she was too intoxicated at the time of the shooting to clearly see the shooter.  However, she stated that she subsequently came to the conclusion that [Horton] had been the assailant after putting "two and two together."  She stated that the two factors were that [Horton] had been wearing the same light blue jeans worn by the shooter, and he had pulled out a gun earlier that week following an argument during which he had accused her of showing interest in another man.

2

[] Randall stated that following the shooting, [Horton] frequently called to tell her that he loved her and ask her not to go to court. He further told her that if she had to go to court, she should plead the "Fifth."

*Id.* Another witness testified that Horton "argued with [] Randall over what he described as 'games played by [] Randall with respect to her interest in other men. During the argument, appellant allegedly pulled out a gun and placed it on his lap." *Id.*

On September 9, 2009, the State indicated that it was ready to proceed to trial, but Horton's counsel requested a postponement because he was ill and "he [had] found an alibi witness whom he wanted to investigate." *Id.* "Speaking directly to the court, [Horton] asserted that he was unclear why the matter was being postponed and maintained that he was ready to go to trial. The court sent the matter to the administrative court." *Id.* On September 10, 2009, "[t]he administrative court approved the postponement, for the reasons asserted above, against appellant's desire to proceed to trial as scheduled." *Id.*

On March 1, 2010, Horton was sentenced to life imprisonment plus a consecutive twenty years of incarceration. *Id.* Horton, through counsel, raised the following claims in the Court of Special Appeals of Maryland:

1. Did the administrative judge err when it failed to follow the dictates of Maryland Rule 4-215 after Horton stated that he wanted to proceed without a lawyer?

2. Did the administrative judge err in finding good cause to postpone the case beyond the 180 day Hicks' deadline? and

3. Was the evidence insufficient to support Horton's convictions?

*Id.,* Ex. 6, p. 2; *see also* Ex. 7 & 8. In an unreported opinion filed on August 18, 2011, the Court of Special Appeals of Maryland affirmed Horton's convictions, rejecting his three claims of error.[1]  *Id.,* Ex. 8.

Horton filed a *pro se* petition for a writ of certiorari with the Court of Appeals of Maryland. *Id.,* Ex. 9. On November 21, 2011, Horton's request for further review was denied. *Id.,* Ex. 10. Horton's judgment became final for direct appeal purposes on Tuesday, February 21, 2012, when the time for seeking further review expired. *See* Sup. Ct. Rule 13.1 ("[a] petition for a writ of certiorari seeking review of a judgment of a lower court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review").

On June 13, 2012, Horton filed a petition for post-conviction relief in the Circuit Court for Baltimore City.  ECF No. 7, Ex. 1.  The petition was withdrawn on August 9, 2012.  *Id.*, p. 9. On August 17, 2012, Horton again sought post-conviction relief.  *Id.*, p. 10.  A hearing on the petition, as supplemented, was held on December 11, 2012.  Both Horton and his trial defense counsel, Kenneth Mann, testified.  *Id.,* Ex. 16.

As litigated and construed by the post-conviction court, Horton raised the following claims:

1.  His Sixth Amendment right to proceed pro se was violated, when the Honorable Charles Bernstein did not acknowledge his request to represent himself;

2.  He received ineffective assistance of counsel based upon counsel's failure to interview State's witnesses, failure to request that Horton be

---

[1] The intermediate appellate court specifically rejected Horton's claims that the trial court failed to comply with Maryland Rule 4-215 and erred in finding good cause to postpone the trial beyond Maryland's 180-day *Hicks v. State,* 285 Md. 310 (1979), deadline. The appellate court also found Horton's challenge to the sufficiency of the evidence both unpreserved and without merit. *Id.*

charged with the lesser included offense, and failure to object to a
legally inconsistent verdict;

3.      He was subjected to prosecutorial misconduct for the use of perjured
testimony from Police Officer Joseph Melott and the State's failure to
disclose exculpatory evidence; and

4.      He received an illegal sentence, because his sentence exceeded that
recommended in Maryland's Sentencing Guidelines.

ECF No. 7, Ex. 13, pp. 2-7. By opinion and order filed on January 9, 2013, the Circuit Court

denied post-conviction relief. *Id.,* Ex. 13.

In his application for leave to appeal the adverse ruling of the post-conviction court,

Horton argued that (1) the post-conviction court failed to address certain claims and (2) the trial

court violated his constitutional right to proceed *pro se*. *Id.,* Ex. 14. In an unreported opinion

filed on October 24, 2013, the Court of Special Appeals summarily denied Horton's Application

for Leave to Appeal. The mandate issued on November 25, 2013. *Id.,* Ex. 15.

Horton now claims that (1) the trial court denied him his constitutional right to represent

himself; and (2) his right to due process was violated by the playing of a 911 tape during the

trial. ECF No. 1, p. 6.

### Standard of Review

An application for writ of habeas corpus may be granted only for violations of the

Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28

U.S.C. § 2254 sets forth the standard for evaluating state-court rulings. *Lindh v. Murphy*, 521

U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). This standard is "highly

deferential" and "difficult to meet." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011); *see also*

*White v. Woodall,* 134 S. Ct 1697, 1702 (2014) (state prisoner must show state court ruling on

claim presented in federal court was "so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement.") (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis of § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Rather, that application must be objectively unreasonable." *Id.* Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.*, 562 U.S. at 101 (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude

that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 599 U.S 766, 773 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

### Timeliness & Exhaustion of State Remedies

Respondents do not contend, and the Court does not find, that the Petition was filed outside the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1).

Before Horton may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court. *See Rose v. Lundy*, 455 U. S. 509, 521 (1982). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728 (1999); 28 U.S.C. § 2254(b) and (c). In Maryland, this may be accomplished by raising certain claims on direct appeal and other claims by way of post-conviction proceedings. Exhaustion is not required if at the time a federal habeas corpus petition

is filed the petitioner has no available state remedy. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Horton no longer has any state direct review or collateral review remedies available to him with respect to the claims raised in this court; thus, his claims are exhausted for the purpose of federal habeas corpus review.

## Analysis

The Respondents argue that Horton's first claim -- the trial court denied him his constitutional right to conduct his own defense -- cannot be considered because it is procedurally defaulted. The Court does not agree.

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

Prior to trial, Horton made a request to discharge counsel after counsel requested a continuance based on counsel's illness and a need to continue the investigation of the charges by interviewing a just-discovered potential alibi witness. ECF No. 7, Ex. 17, pp. 5-6. The case was transferred to an administrative judge, who questioned Horton. Horton, represented at that proceeding by stand-in counsel, indicated he wished to proceed without an attorney rather than postpone trial. ECF No. 7, Ex. 18, pp. 6-9. On direct appeal, Horton argued that the trial court erred under Maryland law in responding to his request to discharge counsel, based on Maryland

8

Rule 4-215.[2] ECF No. 7, Ex. 6, pp. 9-19. The intermediate appellate court denied the claim,

concluding that the administrative judge fully complied with Rule 4-215 in resolving the request

to discharge counsel. *Id.,* Ex. 8. Because the matter was litigated before the Court of Special

Appeals on this issue, the state post-conviction court found Horton's claim procedurally barred

and did not provide further merit review. *Id.,* Ex. 13.

A writ of habeas corpus may be granted only for violations of the Constitution or laws of

the United States. *See* 28 U.S.C. § 2254(a). "Federal habeas corpus relief does not lie for errors

of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citing *Lewis v. Jeffers*, 497 U.S. 764,

780 (1990)). "[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions." *Estelle*, 502 U.S., at 67–68. Horton's ground for relief is

not cognizable, because it is based on an alleged violation of a state procedural rule.

Even if a cognizable constitutional claim was properly stated, Horton would not be

entitled to relief here. A criminal defendant has a Sixth Amendment right to self-representation,

*see Faretta v. California*, 422 U.S. 806, 832 (1975), but his request for self-representation must

be unequivocal. *See, e.g., Meeks v. Craven*, 482 F.2d 465, 466-68 (9th Cir. 1973); *accord*

---

[2] At the time of trial, Maryland Rule 4-15(e) provided that:

> If a defendant requests permission to discharge an attorney whose
> appearance has been entered, the Court shall permit the defendant to explain the
> reason for the request. If the court finds that there is a meritorious reason for the
> defendant's request, the court shall permit the discharge of counsel; continue the
> action if necessary; and advise the defendant that if new counsel does not enter an
> appearance by the next scheduled trial date, the action will proceed to trial with
> the defendant unrepresented by counsel. If the court finds no meritorious reason
> for the defendant's request, the court may not permit the discharge of counsel
> without first informing the defendant that the trial will proceed as scheduled with
> the defendant unrepresented by counsel if the defendant discharges counsel and
> does not have new counsel. If the court permits the defendant to discharge
> counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or
> file does not reflect prior compliance.

*Armant v. Marquez*, 772 F.2d 552 (9th Cir. 1985). The requirement that the request be unequivocal serves two purposes: it ensures that the defendant does not inadvertently waive his right to counsel, and also prevents the defendant from taking advantage of the mutual exclusivity of the rights to counsel and self-representation. *See Meeks,* 482 F.2d at 467; *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989). If a defendant equivocates, he is presumed to have requested the assistance of counsel. *Adams v. Carroll,* 875 F.2d at 1444; *see also United States v. Bennett*, 539 F.2d 45, 49-51 (10th Cir. 1976) (defendant who unquestionably vacillated between representation by counsel and self-representation until six days before trial forfeited right to self-representation); *United States v. Oakey*, 853 F.2d 551, 552-54 (7th Cir. 1988) (defendant's request for self-representation with co-counsel found equivocal, given no right to such "hybrid" representation).

The record reflects that on the day of trial, counsel was ill and requested a one-week delay of trial to regain his health and also to investigate a potential alibi witness. ECF No. 7, Ex. 17. A one-week delay was denied and Horton was scheduled to appear the following day before the administrative judge to discuss postponement, which would encompass waiving his speedy trial rights under *Hicks*.[3] At the hearing Horton, represented by stand-in counsel, stated he did not need an alibi and wanted to proceed immediately to trial on his own. *Id.,* Ex. 18. After his request to discharge current counsel was denied, Horton insisted on leaving the courtroom. *Id.* at 9-10. After Horton departed, the administrative judge acknowledged that Horton would have the right to represent himself, but reserved making such a finding, because trial counsel was not

---

[3] Under Maryland law, a defendant must be brought to trial within 180 days. *See State v. Hicks,* 285 Md. 310, 318, 403 A.2d 356 (1979). The rescheduled trial commenced roughly two weeks after the 180-day *Hicks* deadline expired. No prejudice is alleged to have resulted based on this brief delay.

10

present. ECF No. 7, Ex. 18, p. 11. There is no indication that Horton sought to discharge counsel on the day trial commenced, or at any point during his trial. At sentencing, Horton sought to discharge counsel,[4] arguing that counsel visited him only once, was seen sending an email to the prosecutor during trial, and did not send him copies of discovery after trial. ECF No. 7, Ex. 5, pp. 9-11. At that juncture, the sentencing judge, citing Maryland Rule 4-215, examined the merits of Horton's request and denied it, finding no evidence of ineffective assistance of counsel. *Id.,* pp. 10-15. Horton then became agitated and waived his right of allocution prior to sentencing. *Id.,* pp. 16-34. The record reveals that Horton was not denied the opportunity to represent himself at trial, and thereafter refused to participate in his sentencing proceedings. Accordingly, there is no basis for federal habeas corpus relief based on this claim.

Horton also claims that his due process rights were violated with regard to a 911 tape played at trial. He alleges the prosecution willingly submitted the 911 tape knowing that it falsely referred to the crime scene as the 500 Block of Mechen Street. *See* Paper No. 1, p. 6; *see also* ECF No. 7, Ex. 16 at 31, 71, 78, 92-93. The claim presented here is difficult to discern; it appears, however, that the post-conviction court examined and denied a comparable claim asserted by Horton. *See* ECF No. 7, Ex. 13 at 5-6.

Horton produced no evidence in state court that Officer Mellott committed perjury or the State submitted false evidence by offering for admission the 911 tape. The 911 tape describes a fluid investigation that occurred near the intersection of Division and McMechen Streets. The victim was shot at one location, and then recovered sufficiently to drive away from the scene of

---

[4] It appears that counsel was a panel attorney paid by the Maryland Office of the Public Defender. At his sentencing hearing, Horton stated that he had "sent you [presumably the trial judge] stuff to get rid of [trial counsel] as my lawyer." ECF No. 5, pp. 9-10. He later indicated the letter was sent to the Office of the Public Defender. *Id.,* pp. 10-11.

the shooting before collapsing several blocks away.  ECF No. 7, Ex. 2, pp. 139-152; 159-16;

186-188,  There is no support whatsoever in the record that a material false statement was

willfully admitted into evidence against Horton, that Officer Mellott committed perjury, or that

the asserted falsehood compromised the trial. Indeed, as defense counsel testified at the post-

conviction hearing, to the extent the 911 tape inaccurately described the actual setting of the

crime scene, that inaccuracy undermined the police investigation, which benefitted Horton at

trial.   ECF No. 7, Ex. 16 at 127.   The findings of the post-conviction court are deemed

presumptively correct and shall not be disturbed here.

### Conclusion

The record establishes that Horton is not entitled to federal habeas relief.  There is no

basis upon which to find constitutional deficiencies in the state court proceedings, and Horton

has failed to rebut the presumption of correctness of the findings of fact underlying the rejection

of his grounds for post-conviction or appellate relief.

Additionally, a Certificate of Appealability is not warranted as it may issue "only if the

applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2).   The Petitioner "must demonstrate that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S.

274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are

adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003).  Because there has been no substantial showing of the denial of a constitutional right, a

Certificate of Appealability shall be denied.  *See* 28 U. S.C.§ 2253(c)(2).

For the reasons stated herein, the Court will deny and dismiss the Petition and decline to issue a Certificate of Appealability, because Horton has not made a "substantial showing of the denial of a constitutional right." [5] A separate order follows.

_____
Date

William D. Quarles, Jr.
United States District Judge

_____

[5] Denial of a Certificate of Appealability in the district court does not preclude Horton from requesting a Certificate of Appealability from the appellate court.